UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARLA STAGLIANO,

                    Plaintiff,

       -against-                                6:15-cv-1311 (LEK/TWD)

HERKIMER CENTRAL SCHOOL
DISTRICT and THE HERKIMER BOARD
OF EDUCATION,

                    Defendants.

_____

**MEMORANDUM-DECISION and ORDER**

## I.    INTRODUCTION

The Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, was enacted in 1993 "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity." 29 U.S.C. § 2601(b)(1). Its "most fundamental substantive guarantee [is] the employee's entitlement to 'a total of 12 workweeks of leave during any 12-month period.'" Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 93 (2002) (quoting 29 U.S.C. § 2612(a)(1)). At issue in this case is an intentional effort by an employer to subvert the intent and spirit of the FMLA.

Plaintiff Marla Stagliano ("Plaintiff") commenced the present action against Defendants Herkimer Central School District and the Herkimer Board of Education (collectively "Defendants") pursuant to the FMLA. Dkt. No. 1 ("Complaint"). On December 7, 2015, Plaintiff filed a Motion for a temporary restraining order, seeking to enjoin Defendants from bringing a disciplinary hearing against Plaintiff pursuant to New York Education Law § 3020-a. Dkt. Nos. 4 ("Motion"); 4-10 ("Memorandum"). The Court held a show-cause hearing on December 11, 2015. Dkt. No. 16

("Transcript").  For the following reasons, the Court grants Plaintiff's Motion and enjoins

Defendants from prosecuting a disciplinary hearing against Plaintiff.

## II.     BACKGROUND

Plaintiff, a tenured physical education teacher, has been employed by Defendants since 2004.

Dkt. No. 4-1 ("Stagliano Affidavit") ¶ 4.  On May 22, 2012, Plaintiff requested eight weeks of

maternity leave to commence in August 2012, when she was expected to give birth to triplets.  Id.

The school superintendent at the time, Gary Tutty ("Tutty"), approved Plaintiff's request.   Dkt. No.

12-2 ("Maternity Leave Exhibits") at 1-2.  In addition to requesting maternity leave for the birth of

her children, Plaintiff requested additional child care leave for the purposes of "bonding and/or to

care for the newborn triplets" pursuant to Article VII(D) of the Collective Bargaining Agreement

between the school district and Plaintiff's teachers' union.  Stagliano Aff. ¶ 5.

Plaintiff gave birth to triplets on August 22, 2012, before the start of the school year, which

began on September 4, 2012.  Id. ¶¶ 7-8.  She was absent for the first sixty-six days of the school

year due to her scheduled maternity leave and subsequent diagnosis of postpartum depression.  Id.

¶¶ 8-10.  Plaintiff alleges that her extended leave was approved by her principal, Kathleen Carney

("Carney").  Id. ¶ 10.  For the remainder of the 2012-13 school year, Plaintiff took an additional five

days of leave, two of which were approved for professional conferences and three approved for

personal days pursuant to her union's collective bargaining agreement.  Id. ¶ 11.

During the 2013-14 school year, Plaintiff took seventeen days off from work in order to care

for her triplets, who had been diagnosed with respiratory syncytial virus ("RSV").  Id. ¶ 14.  Carney

was aware of the children's condition, and "did not make an issue of her absences" due to "the

highly contagious nature of this virus."  Dkt. No. 4-8 ("Carney Affidavit") ¶ 5.  Plaintiff took an

2

additional 3.25 days of leave, 2.5 of which were approved as personal days and the remaining 0.75 classified as "other."  Stagliano Aff. ¶ 14.

On June 10, 2014, Plaintiff had a counseling meeting with Carney and new superintendent Robert Miller ("Miller") regarding her absences over the last two years.  Id. ¶ 22; Carney Aff. ¶ 2. Plaintiff alleges that Miller told her to "make arrangements" when care was necessary for her children, even if the illnesses were life-threatening, and that when asked why he would require this, he responded "because I can."  Stagliano Aff. ¶ 22.

During the 2014-15 school year, Plaintiff took thirteen days off from work in order to care for her triplets, who had been diagnosed with chronic ear infections, along with two additional days for professional conferences, all approved by Miller.  Id. ¶ 17.  In each of the three years in question, Plaintiff was rated as either "effective," "proficient," "distinguished," or "highly effective" in her performance evaluations.  Id. ¶¶ 12, 15, 18.

On or about June 24, 2015, Defendants filed eight separate disciplinary charges for Incompetence, Misconduct, and Neglect of Duty against Plaintiff arising from her absences during the three previous school years.  Id. ¶ 24.  A hearing on these charges pursuant to New York Education Law § 3020-a is scheduled to occur on December 18, 2015.  Dkt. No. 4-9 ("Steck Declaration") ¶ 7.  Both parties agree that Plaintiff could be terminated as a result of this hearing. Tr. at 10:1-4, 17:3-8.

At the beginning of the 2015-16 school year, Miller held a meeting at Plaintiff's school, where he warned the entire faculty that teachers should not take time off and stating that "[a]nything more than a day" would be too much time out of the classroom.  Dkt. No. 4-2 ("Onufer Affidavit") ¶ 2; see also Stagliano Aff. ¶ 35; Dkt. Nos. 4-4 ("Thomas Affidavit") ¶ 2; 4-7 ("Kirkpatrick

Affidavit") ¶ 2. At this meeting, Miller referred to maternity leave as "inconvenient." Kirkpatrick

Aff. ¶ 3. Numerous faculty members other than Plaintiff have reported receiving counseling letters

or having other action taken against them for taking leave to care for themselves or their family

members. See Onufer Aff. ¶¶ 3-4, 6 (claiming she was transferred into another department after

returning from leave in addition to receiving a counseling memo); Thomas Aff. ¶ 4 (claiming direct

criticism from Miller over absence due to birth of daughter); Kirkpatrick Aff. ¶ 6 (discussing

another teacher receiving a counseling memo due to leave taken for her son's surgery while her

husband was on active duty in Afghanistan); Dkt. Nos. 4-5 ("Mancuso-LaSalle Affidavit") ¶¶ 2-3

(receiving a counseling memo due to leave taken for illnesses of children); 4-6 ("DePaolo

Affidavit") ¶¶ 3-6, Ex. A (receiving a counseling memo due to absences for encouraged professional

development and donation of sick days to the rest of the school). Many of these instances are for

sick leave of fifteen days or less, which is the yearly allowance listed in the documentation provided

with the disciplinary memos. See DePaolo Aff. Ex. A (illustrating, in a chart, the breakdown of

days off allowed by reason for leave); see also Onufer Aff. ¶ 3; Mancuso-LaSalle Aff. ¶ 3. As a

result, faculty members have expressed a reluctance to take leave to care for their family. Onufer

Aff. ¶ 6; Thomas Aff. ¶ 7; Mancuso-LaSalle Aff. ¶ 9; DePaolo Aff. ¶ 8; Kirkpatrick Aff. ¶¶ 3-6;

Dkt. No. 4-3 ("Valasek Affidavit") ¶ 4. One faculty member notes that other teachers in the district

"are afraid to get pregnant because they are concerned that pregnancy leave may have an adverse

effect on their job." Kirkpatrick Aff. ¶ 3; see also DePaolo Aff. ¶ 8 ("Conversations . . . occur

among teachers on a weekly basis. One teacher even told me she was scared to leave school to get a

biopsy."). Plaintiff notes that other teachers, including Miller's sister-in-law, have not been

disciplined for taking similar amounts of leave or were only disciplined after Plaintiff started to take

4

action against Defendants.  Stagliano Aff. ¶ 36.

Plaintiff filed the instant action on November 5, 2015.  Compl.  Under the FMLA, Plaintiff alleges interference with her rights to take leave to care for her children as well as retaliation, failure to restore Plaintiff to an equivalent position, and discouragement of other employees from taking FMLA-qualifying leave.  Id. ¶¶ 49-52.  Plaintiff claims that Defendants did not give her any information about her rights regarding the FMLA.  Id. ¶ 47.  After correspondence between counsel through the month of November, Steck Decl. ¶¶ 12-15, Plaintiff then filed the instant Motion on December 7, 2015.  Mot.

On December 8, 2015, Defendants filed a Response to Plaintiff's Motion with an accompanying affidavit from Miller and a Memorandum of law.  Dkt. Nos. 9 ("Response"); 9-1 ("Miller Affidavit"); 9-2 ("Response Memorandum").  Defendants claim that Plaintiff did not provide sufficient notice to qualify for protection under the FMLA.  Miller Aff. ¶¶ 2-5; Resp. Mem. at 4-5.  Defendants further argue that Plaintiff has failed to show that a temporary injunction would prevent irreparable harm, as to other teachers exercising their FMLA rights.  Resp. Mem. at 5-6.  On December 9, 2015, Plaintiff filed a Reply, attaching her May 2012 written request for maternity leave and Tutty's approval.  Dkt. Nos. 12 ("Reply"); 12-2 ("2012 Leave Documents").

At the hearing held on December 10, both parties noted that Plaintiff was still teaching while the § 3020-a charges were pending.  Tr. at 3:3-4, 16:21-22.  Plaintiff emphasized the fact that she had requested leave during the 2013-14 year through the procedure that the school administration had in place at the time and that Carney was aware that Plaintiff's children had RSV at the time of her request.  Id. at 6:6-7:11.  She noted that the reason for her leave during the 2014-15 year was known to the office staff; she did not contest the fact that Miller was unaware of the reason for her

5

leave during the 2014-15 year but rather argued that the school district was estopped from claiming lack of notice due to their failure to inform Plaintiff of their FMLA obligations. Id. at 7:12-17, 11:18-12:18; see also Reply at 12. Plaintiff claimed that there was no possible avenue to ensure that her FMLA claims could be raised at either the § 3020-a hearing or on appeal, which is governed by an arbitration review provision in the New York Civil Practice Law and Rules. Tr. at 7:18-9:1. Defendants did not directly address the availability of the FMLA as an affirmative defense to Plaintiff during her disciplinary proceeding. Id. at 16:11-20. Defendants argued that Plaintiff did not qualify for protection under the FMLA because she had not provided adequate notice. Id. Defendants also argued that a temporary injunction, as opposed to a permanent one, would not combat chilling effects. Id. at 15:19-16:10.

### III.   DISCUSSION

Before ruling on the merits of Plaintiff's Motion for a temporary restraining order, the Court must address whether it must abstain from granting the relief requested in Plaintiff's Motion.

#### A.   Younger Abstention

A federal court's obligation to decide cases in which it has jurisdiction is "virtually unflagging." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). However, federal courts "refrain from hearing cases that would interfere with a pending state criminal proceeding or with certain types of state civil proceedings." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (citing Younger v. Harris, 401 U.S. 37 (1971)). Younger abstention is consistent with a strong preference for enforcing "federal rights and federal interests . . . in ways that will not unduly interfere with the legitimate activities of the States." Levin v. Comm. Energy, Inc., 560 U.S. 413, 431 (2010) (quoting Younger, 401 U.S. at 44). The Second Circuit has stated that

Younger abstention is "mandatory" when "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003). The Supreme Court has recently narrowed the type of state proceedings that implicate Younger into three categories: "[1] ongoing state criminal prosecutions . . . [2] certain 'civil enforcement proceedings,' [and] [3] 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.'" Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 591 (2013) (citing New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989)). New York federal courts have found proceedings under § 3020-a to be the type of proceeding contemplated by Younger. Ingber v. N.Y.C. Dep't of Educ., No. 14 Civ. 3942, 2014 WL 2575780, at *4 (S.D.N.Y. June 9, 2014); Levich v. Liberty Cent. Sch. Dist., 258 F. Supp. 2d 339, 342 (S.D.N.Y. 2003); Rubin v. Corning-Painted Post, 190 F. Supp. 2d 541, 543-44 (W.D.N.Y. 2002).

A proceeding that falls under Younger may still move forward if the federal plaintiff shows "that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." Levich, 258 F. Supp. 2d at 342 (citing Schlagler v. Phillips, 166 F.3d 439, 442-44 (2d Cir. 1999)). While the classic case contemplated is a proceeding brought in retaliation for constitutionally protected conduct, the exception encompasses "a prosecution or proceeding . . . brought in bad faith or for the purpose to harass." Id. (quoting Cullen v. Fliegner, 18 F.3d 96, 103-04 (2d Cir. 1994)). The exception is only met when the proceeding is instituted in bad faith; the unconstitutional execution of a legitimate proceeding will not trigger the bad-faith exception to Younger. Id.; see also Diamond "D" Const. Corp. v. McGowan, 282 F.3d 191, 200 (2d Cir. 2002).

In other words, "such claims require an assertion of bias." Ingber, 2014 WL 2575780, at *4.

Plaintiff claims that Younger is inapplicable because there is no legitimate state interest to protect in the instant case and that a § 3020-a proceeding is an insufficient forum for Plaintiff to enforce her rights. Reply at 2. Plaintiff cites to a decision from the Commissioner of Education noting that FMLA violations cannot be redressed through the state system but rather should be separately brought in federal court. Id. at 3; see also Dkt. No. 12-1 ("Commissioner Decision").

In light of the above precedent holding that § 3020-a proceedings are subject to Younger, the Court holds that the instant § 3020-a hearing is no different. First, there is a pending state proceeding, as charges have been instituted and a hearing is imminent. Although the state proceeding is not a criminal proceeding, as a disciplinary proceeding, it is sufficiently close in nature to fall under Younger. See, e.g., Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) (applying Younger to a state bar disciplinary proceeding); see also Ingber, 2014 WL 2575780, at *4. Second, there is a clear state interest in the action. "It has long been recognized that matters involving schools, and the discipline of students and teachers are principally matters of local concern, and that the state has vital interests in maintaining the proper and orderly functioning of its local schools." Levich, 258 F. Supp. at 342 (quoting Rubin, 190 F. Supp. 2d at 544). Plaintiff's argument that there is no possible state interest in trying to circumvent federal law, Reply at 2, misapprehends the nature of the inquiry.

Under Younger, a federal court should consider whether "state law clearly bars the interposition of the constitutional claims." Middlesex Cty., 457 U.S. at 432 (quoting Moore v. Sims, 442 U.S. 415 (1979)). While this factor is not dispositive in light of the Supreme Court's endorsement of a categorical approach in Sprint, the Second Circuit has declined to determine how

8

much weight it carries.  <u>Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.</u>, 805 F.3d 425, 427 (2d Cir. 2015).  Based on Plaintiff's representations at the hearing, Tr. at 7:18-9:1, Plaintiff would not be able to raise her FMLA claim in the § 3020-a proceeding.  However, Plaintiff's support for that contention is a decision by the Commissioner of Education that does not in fact hold that the FMLA cannot be raised as an affirmative defense in a § 3020-a proceeding. Comm'r Decision.  In the decision, the Commissioner declined to count the appellant's FMLA-protected leave toward the appellant's seniority.  <u>Id.</u> at 6.  The footnote referenced by Plaintiff in her Reply, Reply at 3, refers only to the fact that the state system cannot grant monetary relief under the FMLA.  Comm'r Decision at 5 n.2.  The Commissioner ultimately denied relief because accrual of seniority was not a requirement of FMLA leave time.  <u>Id.</u> at 5.  While the Commissioner's Decision indicates that Plaintiff cannot obtain FMLA damages in her § 3020-a hearing, it does not show that she cannot raise the FMLA as a defense in that proceeding.

While the Court finds that this action is subject to <u>Younger</u>, it nonetheless finds that Plaintiff has alleged sufficient facts to satisfy the bad-faith exception.  Taking the disciplinary charges in conjunction with (1) Defendants' failure to notify Plaintiff of her protections under the FMLA, (2) the counseling meeting in which Miller refused to accept Plaintiff's explanations for her absences and told her that he was pursuing disciplinary action "because I can," (3) the numerous other occasions in which Defendants disciplined other teachers for taking FMLA-protected leave, (4) the fact that Miller's sister-in-law has not been similarly disciplined, and (5) the meeting at which Miller informed faculty members that taking more than one day of sick leave at a time was discouraged, the inference is easy to draw that Defendants are attempting to broadly suppress their employees' right to use sick leave to care for family, one of the core protections of the FMLA.

9

Indeed, the supporting Affidavits from Plaintiff's fellow faculty indicate that faculty are reluctant to take leave to care for themselves or for family, which is the exact conduct that the FMLA was intended to cure. The overwhelming number of facts left uncontested by Defendants from which intent to curtail sick leave can be inferred removes this case from the category of "legitimate activities of the States" contemplated in Levin and thus makes Younger abstention inapplicable here.

### B.  Motion for Temporary Restraining Order

The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n, 965 F.2d 1224, 1228 (2d Cir. 1992); Perri v. Bloomberg, No. 06-CV-0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul. 31, 2008). "In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs., 769 F.3d 105, 110 (2d Cir. 2014) (quoting Lynch v. City of New York, 589 F.3d 94, 98 (2d Cir. 2009)). The district court has wide discretion in determining whether to grant preliminary injunctive relief. Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 510 (2d Cir. 2005). "[T]he moving party must establish that without the preliminary injunction, he will suffer an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." Amaker v. Fischer, No. 10-CV-0977A, 2012 WL 8020777, at *2 (W.D.N.Y. Sept. 28, 2012).

10

### 1. Irreparable Harm

Plaintiff argues that the potential violation of her FMLA rights is per se irreparable.  Reply at 1-2.  She also argues that the unavailability of the FMLA as a defense in her § 3020-a hearing and the chilling effect on other employees planning to take sick leave could also suffice as irreparable harm.  Id. at 2-3.  Defendants claim that Plaintiff has not established that she would suffer irreparable harm from the § 3020-a proceeding and that any harm done to Plaintiff from that proceeding would be undone if she ultimately prevails on the merits in this action.  Resp. Mem. at 2-4.  They further argue that a temporary injunction staying the proceeding could not be sustained under a chilling theory, as under the First Amendment, because the chilling effect is connected to the possibility of permanent termination later.  Id. at 5-6.

A plaintiff seeking a temporary restraining order must establish that irreparable harm is likely to occur.  Shady v. Tyson, 5 F. Supp. 2d 102, 106 (E.D.N.Y. 1998).  In order for harm to be irreparable, money damages must be unavailable or at least inadequate.  Pinckney v. Bd. of Educ. of Westbury Union Free Sch. Dist., 920 F. Supp. 393, 399 (E.D.N.Y. 1996).  The risk that "other employees may be deterred from protecting their rights . . . or from providing testimony for the Plaintiff in her effort to protect her own rights . . . . may be found to constitute irreparable injury."  Holt v. Continental Grp., Inc., 708 F.2d 87, 91 (2d Cir. 1983) (discussing irreparable harm in a Title VII case).  In the context of retaliation under the Fair Labor Standards Act, the "weakened enforcement of federal law can *itself* be irreparable harm in the context of a preliminary injunction application."[1]  Mullins v. City of New York, 626 F.3d 47, 55 (2d Cir. 2010) (quoting Lin v. Great

---

[1] The retaliation provision in the Fair Labor Standards Act makes it unlawful to discriminate against employees if they have "filed any complete or instituted or caused to be instituted any proceeding under or related to this chapter, or [have] testified or is about to testify in such

Rose Fashion, Inc., No. 08 Civ. 4778, 2009 WL 1544749, at *21 (E.D.N.Y. June 3, 2009)).

However, "a plaintiff 'must show some evidence of actual chill that would be cured by the requested

injunction.'" Lin, 2009 WL 1544749, at *21 (quoting Bennett v. Lucier, 239 F. App'x 639, 640 (2d

Cir. 2007)).

        In the instant case, Plaintiff has submitted six Affidavits from other faculty members

discussing their reluctance and fear over taking sick leave in the future; a scenario that seems likely

to pass before a permanent injunction could possibly issue.  Importantly, the Affidavits also shed

light on other faculty members who are afraid to either come forward to assist in the litigation or to

ask for sick leave.  Kirkpatrick Aff. ¶ 3; see also DePaolo Aff. ¶ 8.  The potential harms that can

result from choosing not to take sick leave to care for a child are exactly the types of harm for which

money damages would be inadequate.  Furthermore, the FMLA contains specific provisions

discussing the potential remedies available if an employer interferes with FMLA rights.  An

employee is entitled to monetary losses but also equitable relief, "including employment,

reinstatement, promotion, or any other relief tailored to the harm suffered."  29 C.F.R. § 825.220(b).

Many harms that occur from being coerced into not taking sick leave are compensable with

monetary damages.  However, the obvious potential for such issues as developing chronic health

issues or spreading contagious diseases underscores the need for equitable relief, and "employment,

reinstatement, or promotion" will not suffice in such circumstances.  The frequency with which

teachers will need to take family leave in the coming weeks and months is sufficient to show that

_____

proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).
This is a narrower standard than under the FMLA, where it is "unlawful for any employer to
interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under
this subchapter." 29 U.S.C. § 2615(a)(1).

there is a non-speculative possibility of irreparable harm.

  <u>Mullins</u> is particularly instructive here.  In <u>Mullins</u>, 4300 New York City police sergeants sued the city over systematic violations of their overtime rights.  <u>Mullins</u>, 626 F.3d at 48-49.  After the case was filed, the NYPD engaged in practices designed to harass the plaintiffs and attempting to coerce them into changing their deposition testimony, including opening disciplinary proceedings against many of the test plaintiffs.  <u>Id.</u> at 49-50.  The plaintiffs moved for and were granted a temporary restraining order enjoining the NYPD from pursuing disciplinary proceedings against the plaintiffs based on their testimony or participation in the suit.  <u>Id.</u> at 51.  On appeal, the Second Circuit held that testimony where officers indicated that they feared retribution, which was not rebutted by the NYPD, was a sufficient basis for the district court to conclude "that absent injunctive relief numerous plaintiffs would likely (and reasonably) withdraw from this litigation rather than testify and face a line-by-line IAB interrogation."  <u>Id.</u> at 55.  Similarly, the affidavits submitted by faculty members are not rebutted by Defendants and indicate that without injunctive relief, teachers will likely forgo their FMLA-protected leave in fear of having § 3020-a proceedings instituted.

  Defendants cite to <u>Bennett v. Lucier</u>, 239 F. App'x 639 (2d Cir. 2007), which itself relies heavily on a quote from <u>American Postal Workers Union v. U.S. Postal Service</u>, which reads:

> [W]e fail to understand how a chilling of the right to speak or associate could logically be thawed by the entry of an interim injunction, since the theoretical chilling of protected speech and union activities stems not from the interim discharge, but from the threat of permanent discharge, which is not vitiated by an interim injunction.

766 F.2d 715, 722 (2d Cir. 1985).  While this statement seems to capture all cases where a plaintiff is retaliated against for trying to enforce their rights, the Second Circuit clarified the reach of this

language in <u>Moore v. Consolidated Edison Company</u>, 409 F.3d 506, 512 n.6 (2d Cir. 2005). The Second Circuit noted that they do not read this language "as sweeping so broadly" and that it does not apply to cases "where immediate relief was the *only* form of relief that could mitigate the alleged harm." <u>Id.</u> "Our precise holding[ ] in <u>American Postal</u> [was] narrow, relying heavily on the fact that plaintiffs had failed to allege a sufficiently severe or clear violation of First Amendment rights." <u>Id.</u> The Second Circuit also pointed out that <u>American Postal</u> was a First Amendment case involving government employees, a scenario in which the moving party has an exceptionally high burden. <u>Id.</u>

This case is more similar to the facts of <u>Moore</u> than to <u>Bennett</u>. The potential chill contemplated in this case is the potential for teachers not to take sick leave when it would be the best decision for them and their families. Given the frequency with which people fall ill, the only way to mitigate this particular alleged harm is to immediate relief. Truly, if the Court were not to find the threat of irreparable harm in forgoing sick leave, it is difficult to imagine a scenario where irreparable harm could be shown in any case involving retaliation in employment decisions. Therefore, the Court finds that Plaintiff has shown that irreparable harm is likely in the absence of an injunction.

### 2. *Likelihood of Success on the Merits*

In addition to irreparable harm, Plaintiff must show "either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." <u>Otoe-Missouria Tribe</u>, 769 F.3d at 110. In order to establish a *prima facie* case of interference under the FMLA, 29 U.S.C. § 2615(a)(1), a plaintiff must establish five elements: "(1)

14

that she is an eligible employee under the FMLA; (2) that defendant is an employer as defined in the

FMLA; (3) that she was entitled to take leave under FMLA; (4) that she gave notice to the defendant

of her intention to take leave, and (5) that she was denied benefits to which she was entitled under

the FMLA." Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004).

The parties do not dispute that the FMLA would apply to ninety of Plaintiff's absences over

the three school years if Plaintiff has met all of the procedural requirements of the FMLA.  The only

element over which the parties disagree is the fourth: whether Plaintiff provided sufficient notice to

Defendants that she was taking FMLA leave to trigger Defendants' obligations under the FMLA.

Plaintiff argues that her notice during each year was independently sufficient, and that if it was not,

Defendant is still estopped from claiming a lack of notice since the first year, 2012-13, clearly met

the requirements.  Reply at 10-12.  Defendants claim that Plaintiff's notice was insufficient,

particularly in 2013-14 and 2014-15, resting on a failure to prove that she gave sufficient notice.

Resp. Mem. at 4-5.

"In any case in which the necessity for leave . . . is foreseeable based on an expected birth or

placement, the employee shall provide the employer with not less than 30 days' notice, before the

date the leave is to begin . . . ."  29 U.S.C. § 2612(e)(1); see also 29 C.F.R. § 825.302(a).  "When

the approximate timing of the need for leave is not foreseeable, an employee must provide notice to

the employer as soon as practicable under the facts and circumstances of the particular case."  29

C.F.R. § 825.303(a).  "The FMLA generally requires employees to 'comply with the employer's

usual and customary notice and procedural requirements for requesting leave,'" unless there are

unusual circumstances or company policy conflicts with the law.  Millea v. Metro-North R. Co., 658

F.3d 154, 161 (2d Cir. 2011) (quoting 29 C.F.R. § 825.303(c)).

15

In the case of Plaintiff's 2012-13 leave, she requested time off in May for an August due date, well above the thirty-day notice requirement in the FMLA. Defendants do not allege that this written notice failed to follow any district policy. As a result, Plaintiff appears to have given adequate notice for her 2012-13 maternity leave. Plaintiff's leave in 2013-14 and 2014-15, however, was taken due to unforeseeable circumstances. Plaintiff claims that the Carney Affidavit and the awareness of the office staff constituted sufficient notice in 2013-14 and 2014-15 respectively. Reply at 11-12.

The Carney Affidavit reads, "[k]nowing the highly contagious nature of this virus, for the sake of our students and based on what I believed was past practice, I initially did not make an issue of her absences." Carney Aff. ¶ 5. Plaintiff claims that "for the sake of our students" must be read so that Plaintiff's notice regarding RSV was given during the period of the illness. Reply at 11. Defendants claim that the Affidavit is silent regarding timing. Resp. Mem. at 5. While this is an open question of fact, Plaintiff has at least proven a *likelihood* of success on the merits on this point.

The 2014-15 leave is more difficult for Plaintiff. She concedes that only office staff were aware of her children's ear infections. Unusual circumstances may force employees to notify their employers indirectly, Millea, 658 F.3d at 161-62, and Plaintiff could claim that Miller, who approved her thirteen sick days in 2013-14, was trying to intimidate her into taking leave less frequently. However, in Millea, the Second Circuit relied on the fact that the employee in that case designated another employee to notify the supervisor, facts that are not alleged in this case regarding the office staff. Id. at 162. As a result, Plaintiff has not proven a likelihood of success on the merits for the 2014-15 absences.

However, even if Plaintiff's notice regarding both her 2013-14 and 2014-15 absences were

16

insufficient to demonstrate that Plaintiff has shown a likelihood of success on the merits, there are

open questions of fact that, if resolved in a manner consistent with the available information, would

indicate that Plaintiff is entitled to relief.  Based on the disciplinary memo attached to the DePaolo

Affidavit, the standard allowance per year for sick days is fifteen and the standard allowance for

personal days is three.  DePaolo Aff., Ex. A.  Both parties agree that during the 2014-15 school year,

Plaintiff only used thirteen total sick days and was absent for a total of fifteen days.  During the

2013-14 school year, Plaintiff used seventeen sick days and 2.5 personal days in addition to 0.75

further absences.  And if the sixty days of FMLA-qualifying leave during the 2012-13 school year is

omitted, Plaintiff used six sick days, her allotment of three personal days, and was absent a further

two days for professional development. This amounts to a total of 46.25 absences over three years, a

number that is actually below the fifty-four absences allowed for sick and personal days over the

course of three years.  While not all of those 46.25 absences are covered in those fifty-four allowed

days, only 4.75 days, in addition to the six additional days from the end of Plaintiff's maternity

leave, fall outside of the allowances given.

Plaintiff claims that Defendants have levied disciplinary charges under a no-fault attendance

policy; that is, a certain number of absences results in the charges levied regardless of their

circumstances.  Reply at 4.  Defendants have made no indication, in their Response or at the

hearing, that they are pursuing any charges that are not based on this no-fault policy.  If this is truly

the case, then given that Plaintiff provided sufficient notice prior to her maternity leave to trigger

FMLA protections, the remainder of Plaintiff's absences as a whole fall below the absences she was

given for the three years in question. Not only is a § 3020-a hearing for a number of absences lower

than the allowance unlikely, but it might also violate the collective bargaining agreement mentioned

in Plaintiff's Affidavit.  Stagliano Aff. ¶ 5.  As a result, the Court finds that Plaintiff has clearly shown "sufficiently serious questions going to the merits of its claims to make them fair ground for litigation."  Otoe-Missouria Tribe, 769 F.3d at 110.

Therefore, should the balance of hardships tip "decidedly" in her favor, id., Plaintiff will be entitled to an injunction.  In this case, Defendants' hardship would be linked to being unable to discipline or terminate Plaintiff for the duration of the litigation.  Plaintiff's most significant hardship, on the other hand, might include potential termination and the accompanying loss of wages for the pendency of this action in addition to stigmatic harms.  While she would be able to recover back pay under the FMLA if she is victorious, she may not have the financial flexibility to care for three young children for a matter of months or even years while this matter is pending, which is precisely the type of situation that the FMLA is meant to eradicate.  Regardless of whether this particular harm is irreparable, it still affects the *balance* of hardships. As a result, the Court finds that the balance of hardships tips decidedly in Plaintiff's favor, and thus that Plaintiff has met her burden for a preliminary injunction.

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion (Dkt. No. 4) for a temporary restraining order is **GRANTED**; and it is further

**ORDERED**, that Defendants are enjoined from prosecuting a disciplinary action against Plaintiff under N.Y. Educ. Law § 3020-a due to excessive absences for the 2012-13 through 2014-15 school years; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

18

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:        December 16, 2015
              Albany, New York

Lawrence E. Kahn
U.S. District Judge